IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VALLEY FORGE MILITARY            :
ACADEMY FOUNDATION, ET AL.       :
                                 :          CIVIL ACTION
        v.                       :
                                 :          NO. 09-2373
VALLEY FORGE OLD GUARD, INC.,    :
ET AL.                           :

SURRICK, J.                                         JUNE 2, 2014

## MEMORANDUM

Presently before the Court is Defendants' Motion to Dismiss.  (ECF No. 4.)  For the following reasons, the Motion will be denied.

## I.      BACKGROUND

Plaintiff Valley Forge Military Academy Foundation ("Foundation"), a Pennsylvania non-profit corporation, operates the Valley Forge Military Academy and College ("Academy"), which includes a college-preparatory boarding school and a two-year college.  (Compl. ¶ 13, ECF No. 1.)  The Foundation and Plaintiff Valley Forge Military Academy and College Alumni Association ("Alumni Association") are the owner and licensee, respectively, of certain federally-registered and common-law service marks, including "Valley Forge Military Academy," "Valley Forge Military College," "Valley Forge Military Academy & College," "Valley Forge Military Academy & College Alumni Association," and "Valley Forge Experience."  (*Id.* at ¶ 16.)  In addition, the Foundation has acquired significant goodwill and public recognition of marks such as "Lieutenant General Milton G. Baker Founder's Society," "Baker Founder's Society," and "Founder's Society" (collectively the "marks").  (*Id.* at ¶ 54.)

Plaintiffs have used these marks to promote their services and to fundraise for the Academy.  (*Id.* at ¶¶ 17, 19, 55, 57.)

Defendant Valley Forge Old Guard ("Old Guard") is a Pennsylvania non-profit corporation that has been critical of Plaintiffs over the last several years.  (*See id.* at ¶ 25.) Plaintiffs allege that the Old Guard and its officers, Defendants Pete Robinson, Arthur Houston, Michael Kinslow, and Alistair Crosbie, have unlawfully used Plaintiffs' marks to pass off the Old Guard as the official alumni association of the Academy.  (*Id.* at ¶ 24.)  Plaintiffs allege that Defendants use Plaintiffs' marks to solicit funds from parents and alumni through their website, e-mail campaigns, and media releases.  (*See id.* at Ex. B.)  The mission statements of the Old Guard and the Alumni Association are similar.[1]  Plaintiffs submit two letters from parents of students at the Academy that evidence actual confusion regarding the distinction between the Old Guard and the Alumni Association.  (Compl. Ex. E.)

In response to a cease-and-desist letter sent by Plaintiffs, the Old Guard changed its name from the Valley Forge Old Guard to the Founder's Old Guard.  (*Id.* at ¶¶ 46-48.)  The Old Guard also changed its website from www.valleyforgeoldguard.org to www.foundersoldguard.org (*id.* at ¶¶ 48-49), and added a disclaimer that disavowed any affiliation between the Old Guard and the Alumni Association.  Notwithstanding these changes, Plaintiffs allege that Defendants continue to unlawfully use their marks and continue to pass themselves off as the official alumni association of the Academy.   Plaintiffs take issue with Defendants' used of the term "Founder's"

---

[1] The Alumni Association's mission statement reads:  "[T]o enhance the quality of the 'Valley Forge Experience' and to contribute to the welfare and future of the finest institution of its kind in the world through leadership, recognition, contribution of resources, and the investment of time."  The Old Guard's mission statement reads:  "[T]o enhance the nature of the 'Valley Forge Experience' by contributing to the welfare, viability, and future of the Valley Forge Military Academy and College and its Corps of Cadets through leadership, the investment of time, the proper management of tangible resources . . . ."  (Compl. ¶ 31; Pls.' Resp. 3, ECF No. 8.)

in its new name, specifically claiming "Founder's" has obvious meaning associated with Plaintiffs.  (*Id.* at ¶ 52.)

Plaintiffs filed a Complaint, which includes federal claims under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, for trademark infringement (Count I), false designation and unfair competition (Count II), dilution (Count III), false advertising (Count IV), and parallel state-law causes of action (Counts V-VII).  Defendants now move to dismiss.  (Defs.' Mot., ECF No. 4; Defs.' Mem., ECF No. 5.)  Plaintiffs responded to Defendants' Motion.  (Pls.' Resp.) Defendants have filed a reply.  (Defs.' Reply, ECF No. 9.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  "A complaint may not be dismissed because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  *McTernan v. City of York*, 564 F.3d 636, 646 (3d Cir. 2009).

In determining whether dismissal is appropriate, courts use a two-part analysis.  *Fowler*, 578 F.3d at 210.  First, courts separate the factual and legal elements of the claim and accept all

of the complaint's well-pleaded facts as true.  *Id.* at 210-11.  Next, courts determine whether the

facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for

relief.'"  *Id.* at 211 (quoting *Iqbal* 556 U.S. at 679).  Given the nature of the two-part analysis,

"[d]etermining whether a complaint states a plausible claim is context-specific, requiring the

reviewing court to draw on its experience and common sense."  *Iqbal*, 556 U.S. at 663-64 (citing

*Twombly*, 550 U.S. at 556).

## III.    DISCUSSION

### A.    Lanham Act Claims

Plaintiffs brings four claims under the Lanham Act.  Defendants' contend that all of these

claims must be dismissed because Defendants' statements are protected by the First Amendment

to the United States Constitution.  Essentially, Defendants argue that the initiation of this lawsuit

is a thinly veiled attempt to suppress the speech of a small group of outspoken individuals.

Defendants' argument centers on the contention that their speech is not "commercial" and thus

does not fall within the regulations of the Lanham Act.

The Lanham Act regulates only commercial speech.  *Taubman Co. v. Webfeats*, 319 F.3d

770, 775 (6th Cir. 2003) (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,

447 U.S. 557, 563 (1980)).  The Third Circuit has enumerated three factors that must be

considered in deciding whether speech is commercial:  "(1) is the speech an advertisement; (2)

does the speech refer to a specific product or service; and (3) does the speaker have an economic

motivation for the speech."  *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1017 (3d Cir. 2008).

"An affirmative answer to all three questions provides strong support for the conclusion that the

speech is commercial."  *Id.* (quotations omitted).  "Stated succinctly, the commercial speech

doctrine rests heavily on the common sense distinction between speech proposing a commercial

transaction . . . and other varieties of speech." *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 933 (3d Cir. 1990) (internal quotation marks omitted).

Plaintiffs have alleged that Defendants' speech was commercial in nature. Plaintiffs allege that Defendants compete with the Alumni Association for fundraising and alumni services. Plaintiffs further allege that Defendants used Plaintiffs' marks in an advertisement that refers to a specific service, thus satisfying the first two factors that are to be considered in determining if something qualifies as commercial speech. Specifically, Defendants transmitted an e-mail to 4,000 individuals that promoted Defendants' alumni services. (Compl. ¶ 33 & Ex. B.) The third factor is also satisfied because Defendants were economically motivated to send the e-mail because the e-mail explicitly solicited funds for Defendants' alumni services. (*Id.*) Based upon these facts, Plaintiffs have plausibly alleged that Defendants' statements proposed a commercial transaction as opposed to some other type of speech. Since Plaintiffs have pled that Defendants' speech is commercial, it does fall under the Lanham Act. Consequently, Defendants' First Amendment arguments must fail. The alleged appropriation of Plaintiffs' marks for commercial purposes is not protected by the First Amendment. *Facenda*, 542 F.3d at 1018 ("[T]he Lanham Act customarily avoids violating the First Amendment, in part by enforcing a trademark only when consumers are likely to be misled or confused by the alleged infringer's use."); *see also Taubman Co.*, 319 F.3d at 775 (noting that the misleading commercial speech that the Lanham Act deals with is not entitled to First Amendment protection).

In addition to their First Amendment argument, Defendants raise a number of other arguments as to why Plaintiffs' individual Lanham Act claims fail. We will address each argument.

1.      *Trademark Infringement and Unfair Competition*

The Lanham Act applies to the use of a mark "in commerce . . . in connection with the sale, offering for sale, distribution, or advertising of any goods or services [if] . . . such use is likely to cause confusion . . . ."  15 U.S.C. § 1114(1)(a).[1]  Initially, Defendants argue that Plaintiffs' claim fails because Defendants do not use Plaintiffs' marks to sell goods or services. Plaintiffs rebut Defendants' argument claiming that they have alleged that the Defendants use Plaintiffs' marks to provide alumni association services and to solicit funds for such services, which does constitute providing services within the Lanham Act.  Plaintiffs are correct.  The term "services" as used in the Lanham Act has been interpreted broadly.  *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 89 (2d Cir. 1997).  Defendant need not sell services, as the Lanham Act has "been applied to defendants furnishing a wide variety of non-commercial public and civic benefits."  *Id.* at 90 (collecting cases); *Lamparello v. Falwell*, 420 F.3d 309, 314 (3d Cir. 2005) (citing *United We Stand*, 128 F.3d at 89-90); *see also Villanova Univ. v. Villanova Alumni Educ. Found., Inc.*, 123 F. Supp. 2d 293, 306 (E.D. Pa. 2000) (applying Lanham Act to alumni organization and finding that while "they are not commercial entities, the parties to this action are now in competition in that they offer similar services and engage in similar activities"); *Am. Diabetes Ass'n, Inc. v. Nat. Diabetes Ass'n.*, 533 F. Supp. 16, 20 (E.D. Pa. 1981) (applying Lanham Act to two organizations that solicit donations to find services for diabetics).  Here, Plaintiffs sufficiently allege that Defendants used Plaintiffs' marks in connection with providing services within the meaning of the Lanham Act:  Plaintiffs' allege

---

[1] The text of the statute outlining an unfair competition claim contains similar language. 15 U.S.C. § 1125(a)(1)(A) ("[i]n connection with any goods or services . . . uses in commerce . . . false or misleading description of fact . . . which is likely to cause confusion . . .).  Furthermore, a claim for federal trademark infringement and a claim for federal unfair competition "are measured by identical standards."  *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 580 (E.D. Pa. 2002).

their marks were used by Defendants to provide services to the Academy's alumni and to solicit donations for alumni services through their website and e-mail campaigns.[2]

To prove a claim for trademark infringement or unfair competition, a plaintiff must show that: "(1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services." *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994); *Veit*, 211 F. Supp. 2d at 580.  The first two elements—validity and legal protectability—are established where "a mark [is] federally registered and has become 'incontestable' under the Lanham Act." *Fisons Horticulture, Inc.*, 30 F.3d at 472 (citing 15 U.S.C. §§ 1058, 1065).  If the mark has not achieved incontestability, validity depends on proof of secondary meaning or inherent distinctiveness.  *Id.*  Secondary meaning exists when the mark "is interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services." *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000) (citation omitted).  "In general, [secondary meaning] is established through extensive advertising which creates in the minds of consumers an association between the mark and the provider of the services advertised under the mark." *Id.*  Factors that may be considered in determining whether secondary meaning exists include, but are not limited to:  "(1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5)

---

[2] In the section of Defendants' Memorandum where they argue that Defendants did not use Plaintiffs' marks to sell goods and services, Defendants repeatedly state that Defendants' marks are not used in commerce.  However, Defendants do nothing to develop an actual argument to support this bald assertion.  Furthermore, Plaintiffs have sufficiently alleged that Defendants have used Plaintiffs' marks in commerce to survive a motion to dismiss because Plaintiffs claim that Defendants used the marks on their website and in e-mail campaigns. *Laurel Capital Grp., Inc. v. BT Fin. Corp.*, 45 F. Supp. 2d 469, 479 (W.D. Pa. 1999) (finding that a defendant maintaining an Internet website featuring the alleged infringing mark used the mark in interstate commerce).

customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and, (11) actual confusion." *Id.*

Defendants' Memorandum attempts to make an argument that Plaintiffs' marks are not subject to protection under the Lanham Act.  Defendants' attempt fails because Plaintiffs have sufficiently pled that their marks are valid and legally protectable.  Plaintiffs allege that their marks have secondary meaning or are inherently distinctive.  They allege that the marks have been used extensively by the press and other media to identify Plaintiffs and the services they provide.  (Compl. ¶¶ 23, 57.)  In addition, they have alleged that they have spent significant time, effort, and expense advertising and promoting the marks over the last 80 years.  (*Id.* at ¶¶ 17, 21, 55.)  Accepting these allegations as true, we must reject Defendants' arguments.

Defendants next argue that Plaintiffs have not pled the third element of their claims: likelihood of confusion.  To prove likelihood of confusion, a plaintiff must show that "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1229 (3d Cir. 1978), *superseded on other grounds by statute*, Fed. R. Civ. P. 52(a).  Defendants argue there is no likelihood of confusion because they disseminate messages that are critical of Plaintiffs.  *See Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 502 (E.D. Pa. 2006) (finding it difficult for someone to believe that plaintiff created such a self-criticizing website); *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, No. 04-47, 2005 WL 1677256, at *4 (M.D. Fla. July 14, 2005), vacated by 199 F. App'x 738 (2006) (finding no likelihood of confusion where defendants operated consumer watchdog websites and used plaintiffs' marks by posting consumer responses about plaintiffs on the websites).  Unlike *Parker*

and *Whitney*, where the defendants did not offer services in the same market as plaintiffs and did not target similar customers, Plaintiffs allege that Defendants compete with them in the market for fundraising and alumni association services.  Plaintiffs and Defendants direct their activities towards the same customers, namely, parents and alumni.  In addition, Plaintiffs allege that much of the information that Defendants distribute is not, in fact, critical of Plaintiffs.  The rationale of *Parker* and *Whitney* does not apply here.

Defendants also argue that there can be no confusion because their website has a disclaimer.  We cannot rule as matter of law that the disclaimer is sufficient to eliminate the likelihood of confusion.  *See Villanova Univ.*, 123 F. Supp. 2d at 311.  The website contains other material that may plausibly cause confusion, including a mission statement that is similar to that of the Alumni Association, text of the Academy's alma mater, and pictures of the Academy's campus.  Furthermore, there is no indication that Defendants use disclaimers in the course of their other allegedly infringing activities, such as e-mail campaigns and press releases.  Finally, Plaintiffs have submitted letters that demonstrate actual confusion as to the distinction between the Alumni Association and the Old Guard.  (Compl. Ex. E.)  Plaintiffs have sufficiently alleged facts that support the likelihood of confusion.

Defendants finally contend that their use of the marks is protected by the nominative fair use doctrine.  *See Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 222 (3d Cir. 2005) (adopting nominative fair use as a defense in trademark cases).  Defendants argue that they are only using the marks to identify Plaintiffs as the subject of their criticism.  This form of descriptive use, Defendants maintain, is not likely to cause confusion.  We reject Defendants' argument at this juncture.  The facts necessary to establish an affirmative defense generally come from outside of the complaint.  *See Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 657 (3d Cir.

2003).  A defendant may only invoke the nominative fair use defense, which requires a three-part

showing, after a plaintiff has demonstrated likelihood of confusion.  *Century 21*, 425 F.3d at

222.[2]  Further development of the factual record is required before we address this issue.

Plaintiffs have sufficiently stated a claim under the Lanham Act for trademark infringement and

unfair competition.

## 2.    *Dilution*

Defendants contend that Plaintiffs' dilution claim must be dismissed.  To establish a

claim for dilution, a plaintiff must prove that:  (1) the plaintiff is the owner of a famous mark; (2)

"the defendant is making commercial use in interstate commerce of a mark or trade name;" (3)

the "[d]efendant's use began after the plaintiff's mark became famous;" and (4) the

"[d]efendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify and

distinguish goods or services."  *Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*,

212 F.3d 157, 163 (3d Cir. 2000).  A famous mark is defined as that which is "widely recognized

by the general consuming public of the United States as a designation of source of the goods or

services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A).  Factors to consider in determining

whether a mark has the requisite degree of recognition include:  (1) the duration, extent, and

geographic reach of advertising and publicity of the mark; (2) the amount, volume, and

geographic extent of sales of goods or services offered under the mark; (3) the extent of actual

---

[2] To establish the nominative fair use defense, a defendant must prove:  (1) the use of
plaintiff's mark is necessary to describe both the plaintiff's product or service and the
defendant's product or service; (2) the defendant uses only so much of the plaintiff's mark as is
necessary to describe plaintiff's product; and (3) the defendant's conduct or language reflect the
true and accurate relationship between plaintiff and defendant's products or services.  *Century
21*, 425 F.3d at 222; *Pennzoil-Quaker State Co. v. Smith*, No. 05-1505, 2008 WL 4107159, at
*30 (W.D. Pa. Sept. 2, 2008).

recognition of the mark; and (4) whether the mark was registered. 15 U.S.C. § 1125(c)(2)(A)(i)-(iv).

Defendants argue that Plaintiffs' marks are not famous.  This argument cannot defeat this claim at this stage.  We must accept as true Plaintiffs' well pleaded facts.  Plaintiffs sufficiently allege that their marks are famous.  Specifically, Plaintiffs claim the marks have been continuously used since 1928, have continuously been used to advertise and promote for Plaintiffs, have been used extensively by the press in connection with Plaintiffs, and are known throughout the nation and world as identifying Plaintiffs.  *CPC Props., Inc. v. Dominic, Inc.*, No. 12-4405, 2013 WL 4457338, at *5 (E.D. Pa. Aug. 21, 2013) (finding the plaintiff sufficiently alleged its mark was famous because the plaintiff extensively advertised, the plaintiff had been nationally recognized, and that the mark was prominently displayed on all of the plaintiff's signage and menus).  Defendants also argue that even if their use of the marks is dilutive, it is nevertheless permitted.  *See id.* at § 1125(c)(3) (excluding fair use, comparative advertising, and news reporting from liability).  Plaintiffs allege, however, that Defendants offer competing alumni services and the use of Plaintiffs' marks causes confusion as to the source of those services.  These allegations, taken as true, do not fall within any statutory exceptions offered by Defendants.  Plaintiffs' dilution claims survive this Motion.

### 3. *False Advertising*

A false advertising claim under 15 U.S.C. § 1125(a)(1)(B) prohibits a party from making false or misleading representations of fact in "commercial advertising or promotion." Defendants argue that Plaintiffs cannot sustain a false advertising claim because the literature that Defendants distribute does not constitute commercial advertising or promotion.  Defendants argue that they are a non-profit exercising their right to criticize the current administration and

their speech has no commercial purpose.  We previously determined that Defendants are engaged

in commercial speech, and thus their speech is covered by the Lanham Act.  Furthermore, the

Lanham Act false advertising provision "is broad enough to support, in the context of non-profit

fundraising, a claim of false and misleading statements about the services represented by a

protected mark."  *Birthright v. Birthright, Inc.*, 827 F. Supp. 1114, 1138 (D.N.J. 1993); *see*

*Gordon & Breach Sci. Publishers v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1534-35 (S.D.N.Y.

1994) (collecting cases).  In fact, "the Section provides for liability for misrepresentations not

only in commercial advertising but also in the 'promotion' of services."  *Birthright*, 827 F. Supp.

At 1138 (finding Lanham Act applicable to fundraising letters of a non-profit pregnancy

counseling group).

  Defendants misconstrue the allegations in the Complaint.  Plaintiffs allege that

Defendants compete with them in a commercial market for alumni services and that Defendants

have made false and misleading statements in promoting its alumni services.  If Plaintiffs prove

their allegations, they will satisfy the first element of a claim for false advertising because false

promotion of services is covered by the Lanham Act.  *Birthright*, 827 F. Supp. at 1138 ("The

statements contained in fundraising letters about the services provided by a non-profit

organization represent a promotion of those services.").[3]  Therefore, Plaintiffs have sufficiently

alleged that Defendants made a false or misleading statement of fact in commercial advertising

or promotion to allow the claim to go beyond the motion to dismiss stage.

---

[3] Defendants do not argue that Plaintiffs have failed to allege the other elements of a false
advertising claim, which are:
> (2) that there is actual deception or at least a tendency to deceive a substantial
> portion of the intended audience; (3) that the deception is material in that it is
> likely to influence purchasing decisions; (4) that the advertised goods travelled in
> interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in
> terms of declining sales or loss in goodwill.

*Blue Cross of Greater Phila.*, 898 F.2d at 922-23.

B.      **State Law Claims**

Finally, Defendants argue that we must dismiss Plaintiffs' state law claims, which include infringement, unfair competition, unfair trade practices, and dilution.  As Defendants acknowledge, these claims are governed by the same standards as their federal counterparts.  *See Scott Fetzer Co. v. Gehring*, 288 F. Supp. 2d 696, 703 (E.D. Pa. 2003).  Since Defendants make the same arguments that we have already rejected in dealing with Plaintiffs' federal claims, we must deny Defendants' Motion as to the state law claims.

**IV.     CONVERSION TO SUMMARY JUDGMENT**

Defendants devote two sentences in their brief to a request that we convert their Motion into a Motion for Summary Judgment under Federal Rule of Civil Procedure 56(c).  We reject Defendants request.  As Plaintiffs point out, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).  Defendants have failed to do this.  Accordingly, their request will be denied.

**V.      CONCLUSION**

For all of these reasons, Defendants' Motion will be denied.

An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**

13